UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FRANCISCO DIEGO FRANCISCO,<br><br>      Petitioner,<br> v.<br><br>KRISTI NOEM,<br><br>      Respondent. | CASE NO. 2:26-cv-00025-GJL<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

   Petitioner Francisco Diego Francisco ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On January 5, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody. The Petition has been fully briefed. Dkts. 1, 5, 8.

   Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition.

//

REPORT AND RECOMMENDATION - 1

## I. BACKGROUND

Petitioner is a citizen of Guatemala who initially entered the United States on or about January 13, 2015. Dkt. 6 at ¶ 5. On January 14, 2015, United States Customs and Border Patrol ("CBP") detained Petitioner and placed him in Expedited Removal Proceedings. *Id.* That same day, Petitioner received a Notice and Order of Expedited Removal ("Removal Order"). Dkt. 7-2. ICE removed Petitioner to Guatemala on February 6, 2015. Dkt. 6 at ¶ 5.

On April 16, 2019, Petitioner reentered the United States with his minor son and was taken into custody by CBP. Dkt. 6 at ¶ 6. On April 17, 2019, CBP issued Petitioner a Notice of Intent/Decision to Reinstate Prior Order noting the prior Removal Order from January 2015.[1] Dkt. 7-3. ICE released Petitioner on an Order of Supervision ("OSUP") dated April 21, 2019. Dkt. 7-4. Respondents allege ICE issued Petitioner an OSUP because he served as primary caretaker for his minor son. Dkt. 5 at 4; Dkt. 6 at ¶ 7. The OSUP does not reference Petitioner's child or his role as a primary caretaker. Dkt. 7-4

Petitioner alleged fear of return to Guatemala so he was referred to United States Citizenship and Immigration Services ("CIS") for a credible fear interview. Dkt. 6 at ¶ 7. On August 20, 2021, CIS made a positive credible fear determination and referred his case to the Executive Office for Immigration Review ("EOIR") for review by an immigration judge in Withholding Only proceedings. Dkt. 7-5; Dkt. 6 at ¶ 9. Petitioner's claim remains pending before the EOIR. Dkt. 6 at ¶ 10.

---

[1] Respondents contend the entirety of Petitioner's encounter with CBP and ICE occurred on April 16, 2019. Dkt. 5 at 6 n.2; Dkt. 6 at ¶ 7. Specifically, Respondents state Petitioner "was released from ICE custody on an Order of Supervision ("OSUP") as a primary caretaker on or about April 16, 2019." Dkt. 6 at ¶ 7. However, the Order of Supervision is signed and dated April 21, 2019. Dkt. 7-4. For purposes of this Order, the Court incorporates the dates as set forth in the official documents provided by Respondents. *See* Dkts. 7-1–7-6.

REPORT AND RECOMMENDATION - 2

On November 7, 2025, ICE officers were tasked to identify and apprehend Petitioner in Beaverton, Oregon. Dkt. 7-1 at 2. At 7:00 a.m., ICE officers located Petitioner in his registered vehicle, activated their emergency lights, and initiated a vehicle stop. *Id.* The ICE officers confirmed Petitioner's identity and arrested him for immigration violations. *Id.* at 3.

Later that day, ICE issued, and allegedly served, Petitioner a Notice of Revocation of Release ("Notice of Revocation"). Dkt. 7-6. The Notice of Revocation was addressed to Francisco Diego Francisco and stated the decision to detain Petitioner was "made following a review of [his] file and/or [his] personal interview due to the changed circumstances in [his] case." *Id.* The changed circumstances were described as follows:

> You are advised that ICE has determined that the purpose of your release from ICE custody has been fulfilled. You were released as a primary caretaker for your juvenile son. However, your minor children are now in the care and custody of their mother. The subject separated from the mother of his children in May of 2025 and is no longer a FAMU unit.

*Id.* The Notice of Removal was signed by Julio S. Hernandez, Acting Field Office Director, at 2:35 p.m. on November 7, 2025. *Id.*

In the Proof of Service attached to the Notice of Removal, ICE Officer Walker certified that "Sotero Rivera-Mendoza" was served a copy of the Notice of Revocation at 3:10 p.m. on November 7, 2025. *Id.* at 3. In the blank reserved for the "Detainee Signature," someone wrote "Declined." It is unclear who made the entry or who declined to sign the document. *Id.*

Petitioner alleges he did not receive written notice of the reason for his OSUP revocation, either before or after his arrest on November 7, 2025. Dkt. 1 at 5; Dkt. 8 at 7. Petitioner further alleges he has not received an informal interview after his arrest to contest the OSUP's revocation. Dkt. 8 at 7. Petitioner remains detained in ICE custody at NWIPC. Dkt. 1 at 5; Dkt. 6 at 4.

REPORT AND RECOMMENDATION - 3

## II.   PROCEDURAL HISTORY

Petitioner filed the Petition pursuant to 28 U.S.C. § 2241 on January 5, 2026. Dkt. 1. On January 20, 2026, Respondents filed a Return arguing Petitioner's detention comports with due process. Dkt. 5. On January 26, 2026, Petitioner filed a Traverse. Dkt. 8.

The sole ground for habeas relief raised in the Petition is that Petitioner's re-detention without written notice and a legally sufficient pre-deprivation hearing violates his constitutional guarantees of due process under the Fifth Amendment. Dkt 1. Petitioner cites several cases from this District finding the re-detention of a noncitizen without sufficient notice or the opportunity to be heard violates due process under the Fifth Amendment. Dkt. 1 at 2, 7 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130 (W.D. Wash. 2025); *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025)).

Respondents contend Petitioner's detention is both constitutionally and statutorily lawful based upon his reinstated final order of removal.[2] *Id.* at 5. Respondents argue that the cases relied upon by Petitioner are inapposite as they either involve pre-removal order detentions or regulatory schemes distinct from the post-removal order framework at issue here. *Id.* at 7.

Having reviewed the parties' arguments and the relevant legal authority, the Court agrees with Petitioner that Respondents violated his procedural due process rights when his OSUP was revoked without a pre-detention hearing.

---

[2] Respondents also argue Petitioner's detention comports with substantive due process as his detention has not become "indefinite" as required to find his post-removal order detention unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). In reply, Petitioner contends he does not need to establish indefinite detention under *Zadvydas*, but rather that "the manner in which he was *re-detained* violated due process." Dkt. 8 at 2 (emphasis in original). As Petitioner does not argue indefinite detention or argue substantive due process violations applying the *Zadvydas* factors in his briefing, the Court considers only the procedural due process implications of his detention.

REPORT AND RECOMMENDATION - 4

### III.   LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas*, 533 U.S. at 693.

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

### IV.   DISCUSSION

The parties applied the *Mathews* factors in their briefing on procedural due process, as have other courts in this District in immigration cases involving detention after revocation of an OSUP.[3] Accordingly, the Court addresses each *Mathews* factor in turn.

---

[3] *See* Dkt. 1 at 7; Dkt. 5 at 9; Dkt. 8 at 3; *see also Nguyen v. Bondi*, No. 2:25-cv-02723-RAJ, 2026 WL 183819, at *4–5 (W.D. Wash. Jan. 23, 2026); *Teweldemedhin v. Noem*, No. 2:25-cv-02363-JLR, 2026 WL 172029, at *3 (W.D. Wash. Jan. 22, 2026); *Tzafir v. Bondi*, No. 2:25-cv-02126-JHC, 2026 WL 81759, at *3–5 (W.D. Wash. Jan. 12, 2026); *Khim v. Bondi*, No. 2:25-cv-02383-RSL, 2025 WL 3653724, at *4 (W.D. Wash. Dec. 17, 2025) (adopting *Mathews* rationale set forth in *E.A. T.-B.*, 795 F. Supp. 3d at 1321–24); *Wana v. Bondi*, No. 2:25-cv-02321-RSL, 2025 WL 3628634, at *5 (W.D. Wash. Dec. 15, 2025) (same).

A.     **Petitioner's Liberty Interest at Stake**

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee"). That Petitioner was re-detained and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty.

While Respondents suggest this liberty interest does not extend to noncitizens with a final order of removal already in place, Dkt. 5 at 8, 10, Respondents also acknowledge courts in this District have found the Due Process Clause requires a pre-deprivation hearing before revocation of an OSUP. *Id.* (citing *Wana v. Bondi*, No. 2:25-cv-02321-RSL, 2025 WL 3628634, at *5 (W.D. Wash. Dec. 15, 2025); *Khim v. Bondi*, No. 2:25- cv-02383-RSL, 2025 WL 3653724, at *4 (W.D. Wash. Dec. 17, 2025)). "'While the Government may detain noncitizens before removing them, noncitizens must still be afforded due process protections before they are detained.'" *Tzafir*, 2026 WL 81759, at *4 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the [G]overnment's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]")).

REPORT AND RECOMMENDATION - 6

In this instance, Respondents contend Petitioner's liberty interest is reduced because "Petitioner's release on OSUP was always subject, in part, to his role as a primary caretaker for his minor son." Dkt. 5 at 10. However, there is nothing in the OSUP that suggests maintaining custody of his children was a condition of Petitioner's release or that no longer being the "primary caretaker" would result in its revocation. *See* Dkt. 7-4; Dkt. 8 at 5.

The OSUP has three different areas reserved for the Government to enter additional conditions of release – none of which include any reference to Petitioner's children or his continued role as primary caretaker.[4] Dkt. 7-4 2, 3, 5. Nor is there any evidence Petitioner was originally informed that his OSUP required that he serve in the primary caretaker role over his children. Under these circumstances, the record does not support a finding that Petitioner had a reduced liberty interest in his continued release under the OSUP or that his release was subject to a narrow set of conditions.

That the Government allowed Petitioner to remain in the community for more than six years after releasing him on supervision only strengthened his liberty interest. *Tzafir*, 2026 WL 81759, at *3 (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same)). At the time of his arrest, Petitioner had lived and worked in the United States without incident. It appears he complied fully with the conditions of the OSUP.[5] He established his family in the community. While he may no longer

---

[4] The only additions made to Petitioner's OSUP were a condition of release that he "[n]ot violate any state or federal laws" and a notation that his OSUP had been initiated with a next report date of May 7, 2019, at 9:00 a.m. Dkt. 7-4 at 2, 3.

[5] While Respondents' brief explicitly asserts Petitioner committed "numerous criminal offenses" in violation of the conditions of his release (Dkt. 5 at 11), Respondents have not offered specific allegations of criminal activity or evidence to support this claim. To the contrary, Respondents' submissions fail to identify any such criminal history. *See* Dkt. 7. The submitted I-213 Form itself, dated November 7, 2025, that describes Petitioner's arrest, indicates

REPORT AND RECOMMENDATION - 7

serve in the primary caretaking role for his children, his ability to participate meaningfully in their lives is significantly hampered by the revocation of his OSUP.[6]

For these reasons, Petitioner has a strong liberty interest in remaining free from detention. Accordingly, the first *Mathews* factor favors Petitioner.

**B.     Risk of Erroneous Deprivation of Petitioner's Liberty**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and the probable value, if any, of additional procedural safeguards. *Mathews*, 424 U.S. at 335. Having reviewed Petitioner's allegations, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest.

First, as discussed above, the parties dispute whether Petitioner maintaining a primary caretaker role for his children was a requirement for his continued release. The factual dispute regarding the conditions of the OSUP and its subsequent revocation are more appropriately "resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court." *Yildirim v. Hermosillo*, No. 2:25-cv-02696-KKE, 2026 WL 111358, at *4 (W.D. Wash. Jan. 15, 2026) (citations omitted).

Second, Respondents acknowledge an obligation under 8 C.F.R. § 241.13(i)(3) to provide Petitioner with notice of the reasons for revocation of the OSUP and to conduct an initial informal interview to allow Petitioner the opportunity to respond to the reasons for revocation. Dkt. 5 at 11–12. However, Petitioner challenges whether Respondents fulfilled these

---

Petitioner has no criminal history. *See* Dkt. 7-1 at 4 ("Criminal History: None"). The Court will consider Petitioner's claim accordingly.

[6] Petitioner does not dispute whether he remains the primary caretaker for his minor children after he separated from his wife. While the parties have not provided specific details regarding Petitioner's custody arrangement, the Court notes many parents without primary custody of their children continue to play integral roles in their children's lives.

REPORT AND RECOMMENDATION - 8

requirements, and the Court agrees the record suggests Respondents may have failed to sufficiently satisfy these requirements.

Petitioner alleges he never received the Notice of Revocation explaining the reasons his OSUP was revoked. Dkt. 8 at 7. Respondents provided the Notice of Revocation dated November 7, 2025, with an attached proof of service form completed by ICE Officer Walker. Dkt. 7-6. While the Notice of Revocation is appropriately addressed to Petitioner Francisco Diego Francisco, the proof of service indicates it was served on an individual named "Sotero Rivera-Mendoza."[7] *Id.* Additionally, "[d]eclined" is the only entry in the blank provided for the "Detainee Signature." *Id.* It is unclear whether Petitioner declined to sign the proof of service bearing someone else's name or whether "Sotero Rivera-Mendoza" declined to sign a Notice of Revocation intended for Petitioner. As a result, the Court cannot determine whether Respondents did in fact provide Petitioner with the Notice of Revocation. This discrepancy lends itself to finding a risk of erroneous deprivation of Petitioner's liberty.

Similarly, Petitioner disputes whether Respondents provided the post-detention informal interview required by 8 C.F.R. § 241.13(i). Dkt. 8 at 7. The Court agrees it is unclear from Respondent's briefing whether Respondents complied with this standard procedural requirement. In their Return, Respondents allege:

> The Notice of Revocation of Release also indicates that pursuant to 8 C.F.R. § 241.13, Petitioner will be afforded an informal interview at which he will be given an opportunity to respond to the reasons for the revocation and he may submit any evidence or information he wishes to be reviewed in support of his release. As such, Petitioner has been provided notice and will be given an opportunity to be heard regarding his OSUP revocation.

---

[7] As noted by Petitioner, he has been referred to in official documents as "Juan Francisco-Pedro," but Petitioner alleges he has not used the name "Sotero Rivera-Mendoza" or been referred to as "Sotero Rivera-Mendoza" at any point. *See* Dkt. 8 at 7 n.2 (citing Dkts. 7-3, 7-4, 7-5). Respondents have not provided further information to suggest Petitioner has used "Sotero Rivera-Mendoza" as an alias.

REPORT AND RECOMMENDATION - 9

Dkt. 5 at 12. Respondents affirmatively state Petitioner was provided the Notice of Revocation but offer no assurances regarding Petitioner's informal interview. Rather, the language suggests Respondents intend to provide him with an informal interview at some point in the future. *Id.* Combined with the problematic proof of service attached to the Notice of Revocation, there is insufficient evidence to find Petitioner was provided the regulatory protections necessary to avoid the erroneous deprivation of his liberty.

The challenged justification for revoking the OSUP, coupled with the Government's failure to demonstrate compliance with the regulatory process required by 8 C.F.R. § 241.13(i), only highlight the risk of erroneous deprivation of Petitioner's liberty interest. The second *Mathews* factor weights in Petitioner's favor.

**C.     Government Interest in Civil Detention**

In the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing. *Mathews*, 424 U.S. at 335.

While the Court acknowledges the Government's heightened interest in the immigration detention context, it also notes that custody hearings in an immigration court are routine and impose minimal cost. *See* Dkt. 5 at 12 ; *Tzafir*, 2026 WL 81759, at *5. Respondents have articulated no legitimate countervailing interest to justify detaining Petitioner without a pre-detention hearing. *See Ramirez Tesara,* 800 F. Supp. 3d at 1137 (finding third factor favors petitioner where Government cites no legitimate interest for detention without a hearing or evidence that a pre-detention hearing would impose an administrative or financial burden). Respondents have not challenged Petitioner's compliance with the terms of his parole, nor suggested Petitioner poses a public safety risk. To the extent Respondents suggest Petitioner

REPORT AND RECOMMENDATION - 10

"poses a risk of flight because he alleges no avenue to seek relief from removal," Petitioner's pending claim before the EOIR contradicts Respondents' assessment.

Respondents argue the Government has additional interest in "enforcing compliance with its orders of release and returning individuals to custody who violate their terms." Dkt. 5 at 13. However, as discussed above, there is no evidence Petitioner failed to comply with the OSUP or violated any of its terms. The Court is not convinced Respondents' assertion that "Petitioner has fulfilled the purpose of his OSUP" equates to a violation of the OSUP's terms when the alleged purpose is not identified within the OSUP itself.

Moreover, as discussed regarding the second factor, it remains unclear whether Respondents adhered to the standard procedural notice and interview requirements when revoking Petitioner's OSUP and detaining him. This further lowers the Government's overall interest in Petitioner's continued detention.[8] On this record, the third *Mathews* factor favors Petitioner.

In sum, all three *Mathews* factors weigh in Petitioner's favor. The Court finds that Petitioner had a protected liberty interest in his continued release from custody and that due process requires Petitioner to receive sufficient notice and a pre-detention hearing. The Court will grant the habeas petition on this basis and declines to address Petitioner's remaining arguments. The appropriate remedy for Petitioner's unconstitutional detention is immediate release.[9] *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is

---

[8] *See Roca v. Scott*, No. 2:25-cv-2552-KKE-SKV, 2026 WL 60412, at *3–4 (W.D. Wash. Jan. 8, 2026) (finding procedural due process violated when Government failed to provide notice of OSUP revocation and prompt informal interview as required by 8 C.F.R. § 241.13); *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (citing district court cases in the Ninth Circuit finding detention unlawful where ICE fails to follow its own agency regulations when revoking release).

[9] Respondents object to Petitioner's requests regarding the conditions of Petitioner's potential re-detention going forward. Dkt. 5 at 13–14. Petitioner has not responded to these objections in the Traverse, and the Traverse requests a more limited order from the Court. Dkt. 8 at 9 (requesting "order that Respondents not re-detain Petitioner without

REPORT AND RECOMMENDATION - 11

an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

### V. CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

(1) Petitioner's habeas Petition, Dkt. 1, is **GRANTED**;

(2) Respondents shall release Petitioner from custody immediately under the written conditions of the prior OSUP;

(3) Respondents may not re-detain Petitioner without adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate;

(4) Respondents shall file a declaration within **24 HOURS** of the issuance of this Order, confirming that Petitioner has been released from custody and providing the date and time of his release; and

(5) Petitioner may file a motion for his attorneys' fees associated with the instant Motion by **February 20, 2026**. A response, if any, will be due **February 27, 2026**.

Dated this 4th day of February, 2026.

Grady J. Leupold
United States Magistrate Judge

---

adequate notice of the reasons for re-detention and a meaningful opportunity to respond to those reasons." Dkt. 8 at 8. This request aligns with similar relief formulations by other courts in this District, and the Court will grant relief accordingly. *See, e.g.*, *Tzafir*, (ordering that petitioner may not be re-detained "unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate); *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (ordering that petitioner "may not be re-detained until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate").